FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 22, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUANA R. R.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  1:19-CV-03021-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 11, 12. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434. *See* Administrative Record (AR) at 1-6, 12-26. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 1**

1

## I.    Jurisdiction

2      Plaintiff filed her application for disability insurance benefits on April 2,

3 2015, alleging disability beginning on July 7, 2008. *See* AR 15, 216. Her

4 application was initially denied on July 23, 2015, *see* AR 77-83, and on

5 reconsideration on November 23, 2015. *See* AR 85-89. On January 6, 2016,

6 Plaintiff filed a request for a hearing. AR 90-91.

7      A hearing with an Administrative Law Judge ("ALJ") occurred on July 20,

8 2017. AR 30-56. On January 18, 2018, the ALJ issued a decision concluding that

9 Plaintiff was not disabled as defined in the Act and was therefore ineligible for

10 benefits. AR 12-26. On December 10, 2018, the Appeals Council denied Plaintiff's

11 request for review, AR 1-6, thus making the ALJ's ruling the final decision of the

12 Commissioner. *See* 20 C.F.R. § 404.981. On February 7, 2019, Plaintiff timely

13 filed the present action challenging the denial of benefits. ECF No. 1. Accordingly,

14 her claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

15

## II.    Five-Step Sequential Evaluation Process

16      The Social Security Act defines disability as the "inability to engage in any

17 substantial gainful activity by reason of any medically determinable physical or

18 mental impairment which can be expected to result in death or which has lasted or

19 can be expected to last for a continuous period of not less than twelve months." 42

20 U.S.C. §§ 423(d)(1)(A). A claimant shall be determined to be under a disability

only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If the claimant is, he or she is not entitled to disability benefits. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not, the claim is denied and no further steps are required. Otherwise, the evaluation proceeds to step three.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments,

the claimant is *per se* disabled and qualifies for benefits. *Id.* If not, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can perform past relevant work, he or she is not entitled to benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is

susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Moreover, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Id.* at 1115. In order to find that an ALJ's error is harmless, a court must be able to "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Molina*, 674 F.3d at 1111.

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 37 years old on the alleged date of onset, which the regulations define as a younger person. AR 58; *see* 20 C.F.R. § 404.1563(c). She attended school through the sixth grade in Mexico. AR 37, 245. Her preferred language is Spanish and she cannot speak, read, or write in English. AR 37, 243. She has past work as a farmworker and as a fruit checker (or "tallier," as it is listed in the Dictionary of Occupational Titles). AR 51.

///

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from July 7, 2008 (the alleged onset date) through December 31, 2012 (the date last insured). AR 16, 22.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured. AR 18.

**At step two**, the ALJ found Plaintiff had the following severe impairments: degenerative changes of the right shoulder and anterior right shoulder dislocation (status post arthroscopic debridement and stabilization). AR 18.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 18.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), albeit with some additional limitations. AR 18. She could lift and carry less than 10 pounds frequently and 10 pounds occasionally. AR 18. She could occasionally push and pull but needed to avoid doing so repetitively. AR 18. She could never reach overhead with her right arm. AR 18. She had unlimited ability to climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. AR 18. She could frequently crawl and had unlimited ability to balance, stoop, kneel, and crouch. AR

18. She could sit about six hours and could also stand and/or walk about six hours

in an eight-hour workday with regular breaks. AR 18.

Given these physical limitations, the ALJ concluded that Plaintiff was able

to perform her past job as a fruit checker/tallier. AR 22. Based on the vocational

expert's testimony, the ALJ found that this job involved lifting very little weight—

"basically a clipboard and paperwork." AR 22. The ALJ also found that any

reaching in this job was below shoulder level and none was overhead. AR 22.

## VI.    Issues for Review

Plaintiff argues the ALJ erred by: (1) finding that she had past relevant work

as a fruit checker/tallier, (2) failing to consider her inability to speak, read, or write

in English, (3) ignoring the medical opinion of treating physician Fred Thysell,

M.D., (4) discrediting her subjective pain complaint testimony, and (5) failing to

credit her daughter's lay witness statement. ECF No. 11 at 2, 5-21.

## VII.    Discussion

### A.    Plaintiff's Prior Job as a Tallier Qualified as "Past Relevant Work"

At step four, the ALJ determined that Plaintiff could perform her past

relevant work as a fruit checker/tallier. AR 22. Plaintiff contends that this job did

not qualify as "past relevant work" as it is defined in the regulations because her

average monthly earnings were too low for the work to have been "substantial

gainful activity." ECF No. 11 at 5-7.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 7**

1    At step four in the sequential evaluation, an ALJ considers whether a

2    claimant, in light of the assessed residual functional capacity, can perform his or

3    her "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can, he or she is

4    not considered disabled. "Past relevant work" is defined as work that: (1) was done

5    within the last 15 years, (2) lasted long enough for the claimant to learn how to do

6    it, and (3) was "substantial gainful activity." 20 C.F.R. § 404.1560(b)(1).

7    "Substantial gainful activity" is work activity that "involves doing

8    significant physical or mental activities" on a full or part-time basis and is "work

9    that is usually done for pay or profit, whether or not a profit is realized." 20 C.F.R.

10   § 404.1572. The primary way of determining whether a claimant's work activity

11   was "substantial gainful activity" is by looking at his or her earnings. 20 C.F.R.

12   § 404.1574(a)(1). The Social Security Administration sets minimum monthly

13   earning amounts for each calendar year that create a presumption that the work was

14   "substantial gainful activity." 20 C.F.R. § 404.1574(b). For example, for non-blind

15   individuals in 2000 it was $700 per month. *See* Substantial Gainful Activity,

16   https://www.ssa.gov/oact/cola/sga.html, (last accessed April 19, 2020). For non-

17   blind individuals in 2020 it is $1,260 per month. *Id.*

18   If the claimant made these monthly amounts, it is presumed that he or she

19   was engaged in "substantial gainful activity." *See* 20 C.F.R. § 404.1574(b); *Lewis*

20   *v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). However, claimants can rebut this

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 8**

presumption by introducing evidence about (1) the nature of their work, (2) the time they spent working, (3) the quality of their performance, (4) special working conditions, or (5) self-employment. 20 C.F.R. § 404.1573; *Lewis*, 236 F.3d at 515-16. Likewise, if the claimant made less than these monthly amounts, it is presumed that the work was not "substantial gainful activity." *Lewis*, 236 F.3d at 515. But the Commissioner may overcome this presumption by identifying evidence relating to the five factors identified above. *Id.*

Finally, "[t]here is no requirement that a job be performed at the substantial gainful activity level every year in order for it to be considered past relevant work." *Austin v. Comm'r of Soc. Sec.*, 2015 WL 222437, at *3 (W.D. Tenn. 2015). In other words, if a claimant's wages exceeded the presumptive "substantial gainful activity" monthly earning amounts in a particular year, the job still qualifies as "past relevant work." *Id.*

Here, Plaintiff started working as an orchard farmworker for "ACL Farms/Zillah 270 LLC" in the mid-1990s. AR 387; *see also* AR 284, 290. This position involved pruning and thinning branches and harvesting fruit. AR 387. In July 1999, she began also working as a fruit checker/tallier for the same company. AR 381. In this new role, she monitored the trees to ensure that all the fruit was harvested, inspected the harvested fruit in the bins, and documented the harvested fruit's quality. AR 381. In 2001, she stopped working in the farmworker position

and graduated fully into the tallier position. AR 387, 406. She continued in this

capacity until July 2008, when she suffered an industrial injury and stopped

working altogether. AR 350-51, 406.

Plaintiff's payroll tax records showed that she made the following amounts

annually:

**SUMMARY FICA EARNINGS FOR YEARS REQUESTED**

| YEAR | EARNINGS | YEAR | EARNINGS | YEAR | EARNINGS | YEAR | EARNINGS |
|------|----------|------|----------|------|----------|------|----------|
| 2001 | 8332.82  | 2005 | 6414.00  | 2009 | .00      | 2013 | .00      |
| 2002 | 7949.56  | 2006 | 9821.74  | 2010 | .00      | 2014 | .00      |
| 2003 | 11073.80 | 2007 | 643.50   | 2011 | .00      | 2015 | .00      |
| 2004 | 8480.59  | 2008 | 8407.50  | 2012 | .00      | 2016 | .00      |

AR 236.

Plaintiff argues that her average monthly earnings were never high enough

for the job to presumptively qualify as "substantial gainful activity." ECF No. 11 at

5-7. The Commissioner argues that they were in 2003. ECF No. 12 at 16.[1]

The threshold earnings amount for 2003 was $800 per month. *See*

https://www.ssa.gov/oact/cola/sga.html. Plaintiff's average monthly earnings were

---

[1] The Commissioner also argues that, regardless of Plaintiff's earnings level, even unpaid prior work can constitute "substantial gainful activity" as long as it is "the kind of work usually done for pay or profit." ECF No. 12 at 16. This argument completely disregards the regulations, which make clear that a claimant's earnings are the "primary consideration" in determining whether work is "substantial gainful activity." 20 C.F.R. § 404.1574(a)(1). When low earnings are shown, it is presumed that prior work was not "substantial gainful activity" and this presumption "shifts the step-four burden of proof from the claimant to the Commissioner." *Lewis*, 236 F.3d at 515; *see also Le v. Astrue*, 540 F. Supp. 2d 1144, 1149 (C.D. Cal. 2008).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 10**

$922.82 ($11,073.80 ÷ 12 = $922.82). Accordingly, her work as a fruit checker/tallier in 2003 was presumptively "substantial gainful activity."

In her reply brief, Plaintiff argues that the $11,073.80 she earned in 2003 was her total combined earnings for the year, which included earnings from "ACL Farms, Inc." as well as from another company called "Zillah 270, LLC." *See* ECF No. 13 at 3. She argues that looking solely at her income from ACL Farms, Inc., she only made $9,426.55 in 2003 (or $785.54 per month), which was less than the presumptive "substantial gainful activity" amount. *Id.*

Plaintiff is correct that the $11,073.80 she earned in 2003 included her wages from both ACL Farms, Inc. and Zillah 270, LLC. *See* AR 232. However, the record makes clear that both corporations were part of the same overall business operation. They had the same owner (Kevin Gay), the same mailing address, the same physical address, and one company was a corporate officer of the other. *See* AR 296-99, 392, 402. Moreover, Plaintiff herself indicated that she was employed as a fruit checker for "ACL Farms/270 Farms." AR 284. Additionally, Department of Labor & Industries documents listed Plaintiff's employer as "ACL Farms/Zillah 270 LLC," referring to the corporations as one operation. AR 381. The remainder of the record also refers to the two companies interchangeably. AR 223, 290, 367, 375, 402, 380, 409, 422. Finally, Plaintiff's pay stubs reveal that the two companies would alternate issuing Plaintiff's paychecks. *See* AR 296-99.

In light of this evidence, it is clear that Plaintiff's earnings of $11,073.80 in 2003 were from her position as a fruit checker/tallier at the same business operation. This averages out to $922.82 per month, which exceeds the $800 presumptive "substantial gainful activity" monthly earning amount for 2003. Plaintiff makes no attempt to rebut this presumption. Accordingly, substantial evidence supports the ALJ's finding that this position qualified as "past relevant work" under 20 C.F.R. § 404.1560(b)(1).

**B.    The ALJ Harmfully Erred by Failing to Consider the Medical Opinion of Fred Thysell, M.D.**

Plaintiff argues that the ALJ erred by failing to address or consider the medical opinion of treating family medicine physician Fred Thysell, M.D. *See* ECF No. 11 at 11-14 (citing AR 476). The Commissioner concedes that this was error but argues that the omission was harmless because "Dr. Thysell's statements were vague and internally inconsistent." ECF No. 12 at 13.

### 1.    Legal principles

Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 12**

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy this standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13. Moreover, an ALJ errs when he or she ignores a treating physician's medical opinion that is contained in that physician's progress notes. *Marsh v. Colvin*, 792 F.3d 1170, 1171-73 (9th Cir. 2015).

### 2.    Dr. Thysell's opinion

Dr. Thysell was Plaintiff's treating family medicine physician from March 2011 to February 2013. *See* AR 440 (2/23/2013), 452 (3/21/2011). Plaintiff initially saw him for purposes of reopening her state workers' compensation claim. AR 452. In November 2011, he examined Plaintiff and found shoulder tenderness, decreased shoulder range of motion, weak grip strength, and sensory deficits. AR 476. He diagnosed Plaintiff with a right shoulder strain and suspected that she may

1   have also had a brachial plexopathy (i.e., injury to the nerve group that runs from

2   the spinal cord to the shoulder, arm, and hand). AR 476. He noted that Plaintiff's

3   May 2011 shoulder MRI was essentially normal, leading him to believe that her

4   shoulder was not "so much the problem" as much as her brachial plexus, which

5   had never been specifically evaluated. AR 476. His plan moving forward was to

6   refer Plaintiff for electrodiagnostic studies of her upper extremities. AR 476.

7       With respect to functional limitations, Dr. Thysell stated that Plaintiff had

8   "[c]lear limited use of right upper extremity per reaching, working above

9   shoulders, grasping, lifting, carrying, pushing, and pulling." AR 476. He believed

10  that Plaintiff "would be okay for light duty" if it was available. AR 476; *see* AR

11  474. But because Plaintiff was right handed, he thought this was "unlikely." AR

12  476. In the documents he completed for L&I, he stated that Plaintiff could work

13  "modified duty, but [was] essentially limited if any use of the right upper

14  extremity." AR 476.

15      Throughout the following months, Dr. Thysell continued noting "markedly

16  decreased range of motion," "nonspecific" and "diffuse" tenderness, weak grip

17  strength, and "diffuse" sensory deficits. AR 450, 453, 471, 473. Plaintiff's

18  electrodiagnostic tests came back "completely normal" and there was no evidence

19  of radiculopathy, neuropathy, or brachial plexopathy. AR 356. However, Dr.

20  Thysell still believed that brachial plexopathy best explained Plaintiff's symptoms,

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 14**

even though the EMG was negative. AR 356, 445, 447, 450, 471. His plan at this point was to refer her for an orthopedic evaluation. AR 453, 471. The orthopedist eventually recommended shoulder surgery. AR 447.

In February 2012, Dr. Thysell reviewed the vocational counselor's job analysis for "bin checker" (i.e., fruit checker/tallier) and believed that Plaintiff could do it.[2] AR 471. In approving this job, he reasoned that it did not require lifting, carrying, reaching, or handling. AR 471. However, he continued to opine that Plaintiff's right arm and shoulder were "significantly impaired." AR 448.

Following Plaintiff's surgery, Dr. Thysell removed brachial plexopathy as a potential diagnosis. AR 440-43. His revised diagnosis was right shoulder strain, recurrent dislocation, post-op, healing well. AR 440-41, 443. Three months after the surgery he opined that Plaintiff was "significantly better."[3] AR 441. He examined Plaintiff and noted no numbness, no weakness, less tenderness, and no neurologic deficits. AR 441. He also noted that her range of motion was "significantly better," although he still advised her not to raise her arm above shoulder height. AR 441. Dr. Thysell told Plaintiff that he could no longer treat her

_____

[2] After Plaintiff's surgery, Plaintiff's orthopedic surgeon, Stephen Roesler, M.D., and treating family medicine physician, Sophie Gomez, M.D., reviewed the job analysis for the tallier position and discussed it with Plaintiff's vocational counselor. AR 391, 397, 434. Dr. Roesler and Dr. Gomez both agreed that Plaintiff could do the job without any restrictions. AR 391, 397, 434.

[3] This was in January 2013—several weeks after the date last insured. *See* AR 16, 441.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 15**

1   because of issues with the L&I provider network, but believed she would have a

2   "good outcome." AR 440.

3       At the hearing, Plaintiff's counsel gave an opening statement in which he

4   repeatedly emphasized the importance of Dr. Thysell's opinion. AR 35-36. He

5   argued that Dr. Thysell would not test Plaintiff's range of motion because he was

6   afraid it would dislocate her shoulder. AR 35. Counsel also emphasized Dr.

7   Thysell's opinion that Plaintiff was unable to work, that she was not at maximum

8   medical improvement, and that she "needed further workup." AR 35. During direct

9   examination, counsel asked Plaintiff questions about Dr. Thysell's treatment. AR

10   46.

11       Later during the hearing, the vocational expert testified that the job of tallier

12   requires frequent below-the-shoulder reaching to put labels on fruit bins. AR 52-

13   54. The vocational expert reiterated that if someone were limited to occasional

14   below-the-shoulder reaching, that person could not do the job. AR 54.

15       Despite counsel's repeated references to and reliance on Dr. Thysell's

16   opinion, the ALJ did not acknowledge, consider, or weigh this opinion in the

17   decision. *See* AR 21. Plaintiff contends that this was error, emphasizing the

18   functional limitations Dr. Thysell outlined in November 2011. ECF No. 11 at 11-

19   14; *see* AR 476. The Commissioner tacitly concedes error but argues the omission

20   was harmless. ECF No. 12 at 12-14.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 16**

In analyzing harmless error, the Court must assume the truth of the wrongly omitted opinion and then determine whether it can "confidently conclude that no reasonable ALJ" would have reached a different result. *Marsh*, 792 F.3d at 1173. And here, Dr. Thysell opined in November 2011 that Plaintiff essentially could not use her right arm at all.[4] *See* AR 476. The vocational expert testified that the fruit checker/tallier job required frequent below-the-shoulder reaching and that if someone was limited to occasional reaching, he or she could not do the job. AR 54.

Dr. Thysell's opinion goes to the question at the crux of this case—whether Plaintiff could perform her past job as a fruit checker/tallier. Assuming the truth of his opinion that that Plaintiff essentially could not use her right arm (prior to surgery), it is possible that an ALJ could have reached a different result with respect to this question. In this situation, the Court cannot "confidently conclude" that the error was harmless. *See Marsh*, 792 F.3d at 1173 (holding that the error was not harmless in nearly identical circumstances, where the ALJ ignored a treating provider's medical opinion on a central issue). And while Dr. Thysell opined in February 2012 that Plaintiff could do the job, this was based on his mistaken understanding that the job did not involve any reaching. *See* AR 471.

---

[4] The Commissioner argues that Dr. Thysell's opinion was not useful because he did not "indicate the frequency at which Plaintiff could use her right arm"—e.g., frequently, occasionally, etc. ECF No. 12 at 14. However, Dr. Thysell's November 2011 note appears to say that Plaintiff could not use her right arm at all. *See* AR 476 ("essentially limited if *any* use of the right upper extremity.").

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 17**

The Commissioner argues the error was harmless because Dr. Thysell's opinion was "vague and internally inconsistent." ECF No. 12 at 13. This could very well be true (an issue the Court does not decide). And there could be various other reasons why Dr. Thysell's opinion is not persuasive and should be assigned little weight. This determination, however, "rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Marsh*, 792 F.3d at 1173. Because the erroneously omitted opinion, if credited, could conceivably permit an ALJ to conclude that Plaintiff was unable to perform her past job as a tallier, remand is necessary for the ALJ to consider and analyze this opinion.

**C.    Plaintiff's Inability to Speak, Read, or Write in English**

Plaintiff contends that the ALJ erred by failing to consider her inability to speak, read, or write in English. ECF No. 11 at 7-11. The Commissioner responds that because the ALJ determined at step four that Plaintiff could still do the tallier job as it was actually performed, the ALJ was not required to assess her English language skills. ECF No. 12 at 16-17; *see Galvan v. Colvin*, 2016 WL 4468550, at *5 (C.D. Cal. 2016); *Konethongkham v. Astrue*, 2012 WL 1718052, at *9 (E.D. Cal. 2012) ("[E]ven assuming Plaintiff's past relevant work may *generally* require the ability to communicate in English, because Plaintiff *actually* performed this

1    work despite her inability to communicate in English, the ALJ's decision to omit

2    Plaintiff's inability to speak English at Step Four was proper.").

3        In her reply, Plaintiff appears to agree with the Commissioner that her

4    English language skills were not relevant at step four.[5] ECF No. 13 at 10-11. She

5    argues, however, that because the ALJ improperly found at step four that she had

6    past relevant work as a fruit checker/tallier, the ALJ was therefore required to

7    proceed to step five, where her English language limitations *were* relevant. *See id.*

8    In other words, this issue is only relevant—at least the way Plaintiff frames it—if

9    there was error at step four. *See id.*

10       As discussed, the ALJ properly found at step four that the fruit

11   checker/tallier position qualified as "past relevant work." *See supra* at 7-12.

12   However, the ALJ erred by failing to consider Dr. Thysell's medical opinion,

13   which is also part of the step four analysis. *See supra* at 12-18. Dr. Thysell's

14   opinion may affect the residual functional capacity assessment and, consequently,

15   may have a bearing on whether Plaintiff was able to return to her past job as a fruit

16   checker/tallier. If the ALJ ultimately determines that she could not, then the ALJ

17   will need to proceed to step five and Plaintiff's English language abilities will be

18

19       [5] The Court is mindful of case law noting that it is an open question as to whether ALJs
20   are required to consider literacy at step four of the sequential evaluation process. *See Pinto v.
Massanari*, 249 F.3d 840, 846 n.5 (9th Cir. 2001) (noting the contradictory authorities on point
and not reaching the question of whether consideration of language skills ought to factor into
step four).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 19**

relevant to whether she could perform other work in the national economy. Resolution of this issue therefore depends on what the ALJ ultimately finds on remand at step four.

**D.    On Remand, the ALJ Shall Reevaluate the Credibility of Plaintiff's Subjective Pain Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 11 at 14-19. The ALJ's sole rationale for discounting Plaintiff's pain complaints was that they were "inconsistent [with] the medical evidence of record." AR 19. The ALJ outlined the longitudinal medical record and concluded that it belied Plaintiff's "testimony of essentially total impairment of her right arm and hand." AR 20.

However, the ALJ failed to consider and weigh Dr. Thysell's opinion. Because his opinion may affect the analysis with respect to whether Plaintiff's symptom complaints were fully credible, upon remand, the ALJ shall reevaluate Plaintiff's credibility after having considered Dr. Thysell's opinion.

**E.    On Remand, the ALJ Shall Also Revaluate the Credibility of Plaintiff's Daughter's Lay Witness Statement**

Finally, Plaintiff argues the ALJ erred by giving little weight to the letter her daughter submitted. *See* AR 309-13. Plaintiff's daughter described symptoms and limitations generally similar to those alleged by Plaintiff—i.e., right shoulder pain and continued dislocations. AR 309-13. Given the need to consider Dr. Thysell's

opinion and reevaluate Plaintiff's credibility on remand, the ALJ shall also reevaluate the credibility of Plaintiff's daughter's lay witness statement.

### VIII.  Order

Having reviewed the record, the ALJ's findings, and the parties' briefing, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3.  The Commissioner's decision to deny Plaintiff's application for Social Security benefits is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).

4.  Judgment shall be entered in favor of Plaintiff and against Defendant and the file shall be **closed**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this April 22, 2020.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 21**